24-1967, Eastern Missouri, United States v. Charles Hamber Good morning, Mr. Eisenhower. Good morning, Your Honors. Before you begin your argument, the court wishes to extend its thanks and appreciation to you for your service in this case under the Criminal Justice Act. Thank you, sir. May it please the court. Your Honor, I represent, my name is Phil Eisenhower, I represent the defendant, Mr. Hamber, in this case. And Mr. Hamber requests the gun that was obtained, the firearm that was obtained during a search be suppressed because it was obtained pursuant to an unlawful search in violation of the Fourth Amendment. Now in United States v. Gastelan in the Eighth Circuit Court, citing Rodriguez v. USA, 2015 Supreme Court case, held that an officer may not extend a stop beyond the time needed to handle the matter unless the officer develops reasonable, articulable suspicion that there may be some crime afoot. Mr. Hamber argues that the district court error made clearly erroneous factual findings and justified extending the stop. Specifically, the court found that Mr. Hamber's inability to be awakened by Officer Ware shining a flashlight in his face and his irrational explanation for why he was asleep at the wheel of a gas station that was closed at about 2 a.m. Yeah, he'd been there for two hours, too. He'd been there for two hours, yes. He found that his explanation for that was that he'd been working all day since 5.30 a.m. And this was in January, I actually checked the temperature, it was 42 degrees that day. So the court found that Mr. Hamber's explanation was irrational. But if you look at the facts, and if you look at the body camera footage, Mr. Hamber said, again, I've been working all day, it was 5.30 a.m., since 5.30 a.m. The gas station closed at 12, so I guess at the latest Mr. Hamber could have got outside and started pumping gas was 12 o'clock. Mr. Hamber is wearing work clothes. He's in a pickup truck. He's pulling an empty trailer. He's got on overalls, a thermal t-shirt, I think he even had on rubber chaps or something along those lines. And he really gave an explanation that made perfect sense. Because I think we've all had the experience of working outside, you know, hard, all day, and then you go to a gas station, you know, your car's warm, you go to the gas station, you put gas in, and then you might just get a little sleepy when you get back inside the car. But, you know, you start off, you know, you're looking at, we've got to stop, there's a community caretaker function, kind of a wellness check that's made, then you have to look, is there a reasonable and articulate suspicion, ask him to step out of the car, which then creates the terror to stop, right? And, you know, the bottom line is, if you look at it as we progress through this thing, I mean, if you're an officer, usually the guy that's been at the gas pump for two and a half hours and is sleeping and can't be awakened is under the influence, right? So I think that sounds like reasonable, articulable suspicion to me. So he asks the guy to get out of the car, and then he asks him to pat him down, and he consents. Do what you've got to do. You know, and there's cases all around the country that say that exact answer is consent. Now, it's a little fuzzy, perhaps, but that's what you've got. Now, where's the extended piece of this coming into play? Because I'm looking at the timing, and there doesn't seem to be any kind of unreasonable delay in the middle of this as it's going on. I mean, he checks to see the guy's, you know, who he is, what's his story, right? And he finds out he's a previously convicted felon, right? So that's what we know. Well, Judge, I'd ask the court to look at the entirety, the totality of the circumstances before he, you know, before he made the decision to get him out of the car. And the body camera footage shows that the district court, in my opinion, made clear factual findings, clearly erroneous factual findings. And I base this, Judge, upon the fact that the court found that his explanation for being there was irrational. But if you look at the specific situation, he's dressed in the work clothes, it's cold, he falls asleep. And the court also relied upon his, Mr. Hamber's inability to be awakened. But if you look closely at the body camera footage, Officer Ware approaches the car at 19 seconds, okay? Or Officer Ware, I'll put it this way. When Officer Ware gets to the vehicle, okay, he's shining his flashlight. He shines his flashlight briefly at Mr. Hamber's face, and then he obviously scans the driver's side compartment looking for some sort of, maybe there's weapons or something along those lines. And then Officer Ware goes, and Mr. Hamber wakes up. And Mr. Hamber wakes up, and even in the court's factual findings states that 13 seconds, if you analyze the body camera footage and then apply it to what the court found. The court found that Mr. Hamber was responding appropriately to the officer's commands, or the officer's questions, 13 seconds after Officer Ware first reached the driver's side. And so to find that, the officer is saying, well, I got him out of the car because I was concerned about his ability to safely operate a vehicle, which I think would be legitimate. However, Your Honor, I would argue that that investigation was complete, okay? What he had determined was that Mr. Hamber was, and I'm sure you've watched the body camera footage, Mr. Hamber was responding appropriately. He was exhibiting no signs of impairment. He gave a reasonable explanation as to why he was there. And then the officer asked him for his driver's license and his insurance, and the officer takes those documents back into his vehicle, and he starts running. And then what he says, and it's on the body camera footage, is, well, after he's determined that he has a valid driver's license, he's not wanted or warranted, and has been giving appropriate responses to all of the officer's commands, that's when he says, well, I think he's, then it's inaudible, so I'm going to get him out of the truck, okay? And the officer testified in the suppression hearing that when they run people, they get a little tiny thing that said, this person may be a convicted felon. So I believe, judges, that when the officer determined that he had a valid driver's license and that the warrants, he had no warrants, he had no wanteds, that the investigation was complete. Because Mr. Hamber had exhibited no signs of impairment, nothing. And the courts are obligated to look at the totality of the circumstances in this case. And in the government's brief, they talk about how subjective, you know, the officer's subjective intentions or reasons for asking somebody out of the car are not relevant to Fourth Amendment cases. But again, if you look at the totality of the circumstances, you have to consider the fact that he just said on body camera footage, I think he's a, I'm pretty sure he's a, so I'm going to get him out of the car. He doesn't say, I'm going to get him out of the car because I'm concerned about his ability to drive. The entire body camera footage is like 45 minutes long. He never even, the officer never even addresses whether or not he believes he was impaired. So I think, I think that in this case, in those cases that say that you can't like Wren or Robinette, that say that you can't consider an officer's subjective intentions, those are all where the officers pull over, when they pull over anybody, they ask them to get out of the car. Okay? That's what the officer did in Pennsylvania versus MIMS. And then in Robinette, the officer, after he determines whether or not he's going to get, give somebody a ticket or not, whether he gives them a ticket or not, he says, well, do you mind if I search the car? And he does that in every case. That's not what happened here. Okay? So I think in this case, the officer's subjective intentions, as evidenced by what he said on the video, is relevant toward the totality of the circumstances and a possible basis to justify suppressing the weapon. I see I'm out of time. Counsel, just a little, just a peripheral question. Mr. Hamber has been released from the Bureau of Prisons. He has.  Thank you. Thank you, judges. All right. Counsel, you may proceed. May it please the court. I'd like to start with the point that Judge Erickson made, which was that there was no unreasonable delay here, and it really goes into the appellant's argument that this investigation was complete. The officer is dispatched to the gas station at 2 o'clock in the morning, and it's based on a report from a gas station employee calling 911, saying that there's a running truck that's been parked at a gas pump for an hour and a half with the driver slumped behind the  And that's exactly what the officer encounters when he gets there. He finds Hamber passed out behind the wheel. And by 58 seconds in the body cam footage, that's when the officer finally gets Hamber to wake up from shining the light and knocking on the window. The officer's interaction with Hamber lasts only another minute at the truck. Counsel, I'm with you so far, and I think there's no question here that Officer Ware had reasonable suspicion for the Terry stop. To me, the only question is whether that reasonable suspicion dissipated at some point. And at what point did Officer Ware determine that Hamber was, quote, responding appropriately? Officer Ware determined that Hamber was responding appropriately for 24 seconds. Once the officer got him awake, the officer then says, what are you doing? What's going on? Hamber offers unintelligible responses. The officer then tells Hamber, you were passed out, were you asleep? And Hamber's response is, I probably was. He still doesn't know what's going on. And then Hamber offers, well, I've been working all day. Hamber never explains how that resulted in him being passed out for an hour and a half in his running truck at the gas station. Right, but to get back to my question, chronologically, when did Officer Ware determine that he was responding appropriately? And why didn't reasonable suspicion dissipate at that time? A minute and 34 seconds into the body cam footage, Your Honor. What happened after that? After that, all Officer Ware asked Hamber was to provide him with his license, which Hamber did. He provided an appropriate response. And he had a valid license and no warrants. That's correct, Your Honor, but none of that bore on the issue of whether Hamber was safe to drive. So the officer talks to him. So responding appropriately means what? Responding appropriately was for 24 seconds, and the officer's testimony was uncontradicted that it wasn't enough time for him to make a determination as to whether Hamber was capable of safely driving. And when the officer checks his license, absolutely, it comes back valid. It comes back with no warrants, and it shows that he might be a convicted felon. But none of that bore on the issue, the mission of the stop, which was to determine whether Hamber was impaired or whether he was capable of safely driving. And that's why the officer ordered him out of the car. And at that time, the other... So what articulable facts occurred after the time he was responding appropriately that would lead him to believe that there was still reasonable suspicion that he was impaired? Your Honor, the responding appropriately, the time period, the 24 seconds, was not enough to dispel the reasonable suspicion that was created by the circumstances in which the officer found Hamber. That's your argument, but are there facts in the record? There are no facts in the record after the point in time when Hamber starts responding appropriately because the officer... It's such a brief period. And I think this court's recent decision in Host teaches that, that even where you have a response from someone who's found in Hamber's circumstances, that I'm doing fine, that that's not enough to dispel the reasonable suspicion from when the officer finds Hamber in those circumstances. Why did he not give a field sobriety test if he was concerned? The testimony from Officer Ware, Your Honor, was that he gets Hamber out of the truck. And the first thing he wants to do, because he's observed these construction tools in the truck, is he wants to make sure that he's safe. And Hamber consents to the search. That's not an issue here. And so he conducts the search and finds that, although he had previously asked Hamber if he had a gun and Hamber said no, that Hamber had a loaded pistol in his pocket. The officer's testimony was that after he finds the gun, there's no point in conducting any field sobriety test to determine whether Hamber is safe to drive because Hamber's not leaving at that point. He's under arrest. So, I wanted to address one other point that came up, and it wasn't brief, but this community caretaker exception, that even if there wasn't reasonable, there was reasonable suspicion when he ordered Hamber out of the truck, but even if there wasn't, this court has recognized that the officer has a duty to the public to make sure that someone found in Hamber's situation is capable of safely driving to protect others on the road. So if for some reason the court were to find that there was not reasonable suspicion, it was still reasonable for the officer to take that step to get Hamber out of the truck in order to ensure that he was safe to operate that vehicle. The last point I would like to address is that the real challenge made by Hamber on appeal is that the district court made clearly erroneous factual findings. And he challenged two specific findings. One was that the body cam footage somehow doesn't show that Hamber failed to wake up by having the flashlight shine in his face. The body cam footage shows that the officer shining that flashlight directly into the driver's side window, and the officer testified without contradiction on direct examination and cross-examination at the suppression hearing that I shined the flashlight in the window at the driver in an attempt to wake him up. And the district court found that that testimony was credible. That cannot be clearly erroneous. There's no contradiction between the body cam footage and the officer's testimony. So under this court's decision in U.S. v. White, that can't be clearly erroneous. The second fact that he challenges is he says, when I told the officer I had been working since 530 in the morning, that was a reasonable explanation for why I was in the situation I was in. I wanted to ask you about that. Is a belief that something is not a reasonable explanation a finding of fact? I believe that's a factual finding. That's a determination that the trial court made that was within its discretion. And Hamber, that finding, there was no rational explanation for the situation. All Hamber said was that he had been working, but what he never did was explain how working since 530 in the morning led to him being asleep at the gas station for an hour and a half in his running truck. He never took that further step to explain how it is that that led him to that circumstance. So I think the district court cannot be found to have clearly erred based on its view of the whole interaction between the officer and Hamber at that truck, which lasted for only one minute. So, when we look at Holt, you know, basically we said there that the officer is not required to accept a statement from the defendant that he's fine, that he's sober, that there's no problem. You know, that the explanation alone is not sufficient to compel the officer to find that he's in fact, that is evidence that he is in fact sober and ends the discussion, right? And for obvious reasons, because everybody would say, I'm sober, right? And if they were not showing obvious signs of intoxication, that would end the interrogation or the discussion, right? And what you've got going on here is you've got somebody who is engaged in behavior that frankly is consistent with people who are under the influence, right? I mean, this is not the first rodeo that we've seen where we've got people who are passed out at drive-thrus, at gas stations, in the middle of parking lots, passed out at stop signs. I mean, those cases are ubiquitous. And it seems to me that Holt stands for the proposition that the mere assertion that I have an explanation is not binding on the officer. That's absolutely correct, Your Honor. That's how I read Holt as well. And I think it's important to remember also the officer's testimony was uncontradicted as was the district court's factual finding that this is a high crime area that's known for heavy drug use. So just because the officer didn't smell alcohol, there are any number of other substances that don't carry an odor that the defendant could have been impaired by. So for all of those reasons, I think that the officer in this case did everything exactly right. He had reasonable suspicion. He took the appropriate steps to get the defendant away from the potential weapons to protect his safety. He wanted to make sure the defendant was safe to drive to protect the defendant's safety and the safety of the public. So we ask that this court affirm the district court. Thank you. Very well. Thank you. Does the appellant have any time left? His time has expired, Your Honor. All right. We'll allow you a minute for rebuttal if you would like or you certainly are free to rest where you are. I don't need any more time, Judge. Thank you. Thank you very much. All right, counsel. Thank you for your arguments today and the case is submitted. The court will render a decision as soon as possible. Does that conclude our testimony?